UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BLAIR TAYLOR                                              CIVIL ACTION

VERSUS                                                   NO. 16-11770

MARLIN GUSMAN                                            SECTION "I" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Blair Taylor, is a prisoner currently incarcerated in the Riverbend Detention Center in Lake Providence, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman. Taylor alleges that while incarcerated in the Orleans Parish Prison system ("OPP") from August 15, 2014 through October 2015, he was attacked and injured on two separate occasions – once on October 18, 2014 by sheriff's deputies, and again on August 15, 2015, when other inmates stabbed him and sheriff's deputies failed adequately to protect him from the attack; and that he was subjected to unsanitary conditions of confinement. He seeks compensatory damages. Record Doc. Nos. 4 (Complaint) and 4-1 (Original Complaint at ¶ V).

On September 13, 2016, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Charlin Fisher, counsel for defendant.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in the Riverbend facility as a pretrial detainee charged with murder.  He stated that he currently has no scheduled trial date. He confirmed that the claims he asserts in this case arise from the time period from August 2014 until October 2015 while he was incarcerated in OPP as a pretrial detainee on the murder charge.

Taylor testified that his first claim relates to an altercation in which he was involved with deputies at OPP in October 2014, possibly October 18, 2014, as reflected in his written submissions, Record Doc. No. 4-1 at p. 3, only about two months after he was first incarcerated.  He stated that on that date, he was being transferred from the Templeman 5 unit of OPP to the old OPP jail, and ranking officers, Lt. Holmes and Capt. Ruiz, were trying to place him on a particular tier.  He stated that he resisted being placed on that tier because certain other inmates who were already on that tier were "from around the (same) area" as the person he is accused of killing.  Taylor stated, "I was refusing and from there it got aggressive."  He said that in resisting being placed in that area, he became involved in a fight with Holmes and Ruiz, who called in assistance from OPP Special Operations Department ("SOD") deputies. Taylor said that he suffered a broken jaw in the altercation with the deputies.

Taylor testified that the 2014 altercation did not last long because he was outnumbered by the deputies and he "just balled up." He could not identify the particular deputy who broke his jaw, but he said he knows it was one of the SOD deputies. "Once I went to the nurses station and they found out I had a fractured jaw, I went to the hospital." He alleged that the officers used excessive force on that date and confirmed twice more during his testimony that the incident occurred in October 2014.

Taylor stated that his second claim arises from an incident that occurred on or about August 8, 2015,[1] when he was attacked by other inmates. He confirmed that he had received a copy of the medical records produced by the sheriff in response to my order. Record Doc. Nos. 9, 15. He said that some of the facts in the records are not accurate, but he confirmed the accuracy of the medical records noting that he was taken to the hospital emergency room on August 8, 2015, for treatment of multiple stab wounds after an altercation.

Taylor testified that the stabbing occurred in the old jail facility at OPP. He stated that he did not know the names of the two or three inmates who stabbed him. Record Doc. No. 4-1 at p. 4. "I was not familiar with them at all," he said, stating that the other inmates were not people he knew either in jail or previously. He testified that he had only been on that particular tier in the old jail for about two or three weeks and that he

_____

[1]Taylor's complaint alleged that this attack occurred on August 15, 2015. Record Doc. No. 4-1 at p. 4.

had no prior problems, arguments, threats or altercations with the inmates who stabbed him, either inside the jail or outside before his incarceration.  "What I was told, with the charge I'm on [the killing of a person named McBride] . . . one of the guys who I got attacked by, [his] last name is McBride too."  He stated that his attacker "might have been a relative" of the person he is charged with killing, but he does not know if his attackers were family members of his alleged victim. Taylor testified that this attack by other inmates happened without any warning, following a visitation. "They just jumped on me," he said.

Taylor asserted that there was no deputy on the tier at the time of the attack.  In his complaint, Taylor wrote that "[t]here were numerous occasions where . . . I was on tiers and there was no deputy but they would do rounds and upon making their rounds they heard me screaming and eventually came to my aid."  Record Doc. No. 4-1 at p. 4. Asked during the Spears hearing if there was usually a deputy on the tier, he stated that deputies came on the tier "in and out . . . very rarely," resulting in lax security.  Taylor described the tier as including an area where the deputy is supposed to walk up and down a hallway between the two sides of the tier where the inmates are kept.  He estimated that a deputy would periodically walk down the hallway for only about two hours out of an eight-hour shift.  He said the attack occurred in an open room in the tier.

Taylor estimated that the attack lasted about thirty minutes and that deputies did not arrive in the area until about ten minutes later.  He said he got the deputy's attention, and the deputy opened the door, removed him from the tier, brought him to a ranking officer and then transferred him to the medical department.

Taylor described his injuries as stab wounds to his neck, back, arm and leg.  In his complaint, he wrote that "I received a number of stab wounds and cuts over 40% of my body."  Record Doc. No. 4-1 at p. 4.  He confirmed the accuracy of a document in his medical records entitled "Nurse Notes" dated August 8, 2015, that his stab wounds were cleaned and bandaged and that he was then transferred to the Charity Hospital emergency room, where he was prescribed Percocet for pain.  He said the Percocet was substituted with Altrans, a different pain medicine, at the jail.  He said he received and took that pain medication for about two weeks.  Taylor stated that he received stitches for the stab wounds to his arm and back and staples for the head wound.  He confirmed that the wounds "healed very good" in three weeks to a month, and that he has scars from these stab wounds.

Taylor stated that his complaint in this case relates to "the safety issue" arising from lax security at OPP and that he is not complaining about the medical care because "they did what they had to do" medically for his injuries.  He confirmed that his complaint about the stabbing by other inmates is that, at the time he was attacked, the

deputy on duty was not walking the hallway to make sure an attack did not occur.  He reiterated that about 40 minutes passed from the time the attack commenced until a deputy appeared in the area.

Taylor testified that he has suffered mental anxiety, including being placed on suicide watch, because even after the attack, deputies tried to – but did not actually – place him "in harm's way" again.

As to his final claim, Taylor confirmed that he was exposed to unsafe, unsanitary and unhealthy conditions of confinement at OPP.  He wrote in his complaint that the improper conditions included "a lack of air, ventilation and cleanliness. . . ."  Record Doc. No. 4-1 at p. 5.  During his testimony, he complained only about dirt, mold in the showers and dirty blankets.  He stated that he suffered "no real illness," but experienced some infections, including a "boil" that had to be drained and treated with antibiotics, resulting from the dirty conditions.  He testified that the boils went away after about a month, during which time he was being given antibiotics in pill form.

On cross-examination, Taylor testified that he did not know the name of the deputy who was on duty and arrived after the stabbing incident. Asked if he ever complained about lax security, he stated that he did not do so until <u>after</u> he was attacked because he had not had any problems with other inmates.  He also testified that he named

Sheriff Gusman as defendant in his lawsuit because the sheriff is in overall charge of the jail.

## ANALYSIS

I.     STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of Taylor's constitutional rights, even under the broadest reading.[2]

## II.   PRESCRIPTION BARS OCTOBER 18, 2014 CLAIM

Taylor's first claim is that he was subjected to excessive force when his jaw was broken in an altercation with OPP deputies on October 18, 2014. This claim is prescribed by the applicable statute of limitations.

The district court may raise the limitations or prescription issue sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. Wilke v. Meyer, 345 F. App'x 944, 945

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

(5th Cir. 2009); <u>Lopez-Vences v. Payne</u>, 74 F. App'x 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing <u>Gartrell v. Gaylor</u>, 981 F2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" <u>Stanley v. Foster</u>, 464 F.3d 565, 568 (5th Cir. 2006) (quoting <u>Harris</u>, 198 F.3d at 156).

The incident upon which Taylor bases this claim occurred on October 18, 2014. His complaint was tendered for filing to the clerk of this court more than one year later, on June 13, 2016. Record Doc. No. 1 (Deficient Complaint). If the mailbox rule applicable to prisoner suits was applied, his current lawsuit would be deemed filed in this court on the date he signed his complaint. However, in this case, although Taylor signed his complaint, Record Doc. No. 1 at p. 6, he failed to fully date his signature, indicating only that his signature was affixed to the complaint in 2016. Therefore, the only available submission date in the record is June 9, 2016, the date the envelope in which he first mailed his complaint to the court was postmarked in Shreveport, Louisiana. <u>Id.</u> at p. 7. This is the earliest date appearing in the record on which Taylor could have delivered his complaint to prison officials for mailing. Thus, even under the "mailbox rule," Taylor's complaint is considered to have been filed and this action commenced at the earliest on June 9, 2016, almost 20 months after the October 18, 2014 incident.

Although Section 1983 has no statute of limitations, the one-year Louisiana prescription statute, Louisiana Civil Code article 3492, applies to suits brought in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (McNamara, J.) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Moore, 30 F.3d at 620; Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)); accord James v. Branch, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009) (Duval, J.) (citations omitted).

Federal law determines when a Section 1983 claim accrues.  Jacobsen, 133 F.3d at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action.  The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief."

Duplessis, 2009 WL 3460269, at *5 (quoting Wallace, 549 U.S. at 388) (citing Jacobsen, 133 F.3d at 319; Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998)); accord Dixon v. Cooper, 260 F. App'x 728, 729 (5th Cir. 2007); Piotrowski v. City of Houston, 51 F.3d

12

512, 516 (5th Cir. 1995).  Determination of when plaintiff knew or should have known of the existence of a possible cause of action has two factors:  "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."  Id.; accord Dixon, 260 F. App'x at 729.  In the instant case, as a direct participant in the October 18, 2014, altercation about which he complains, there is no question that Taylor knew about the attack when it occurred.

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints.  Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987).  However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes.  United States v. Petty, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); Stevenson v. Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

As noted above, the earliest date on which prison officials could have received Taylor's complaint for delivery to this court is June 9, 2016, the date the envelope in which he first mailed his complaint to the court was postmarked.  Record Doc. No. 1 at p. 7.  Giving Taylor the benefit of every doubt, his complaint is therefore considered filed

and this action commenced on June 9, 2016, well past one year after the incident occurred.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257. The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Dominion Explor. & Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007) (citing Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994); Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So. 2d 1034, 1054-55 (La. 1987)). Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not

run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." <u>Pracht v. City of Shreveport</u>, 830 So. 2d 546, 551 (La. App. 2d Cir. 2002).

In this case, Taylor's complaint is deemed filed under the mailbox rule applicable to prisoner complaints on June 9, 2016. Accordingly, the one-year prescriptive period applicable to Section 1983 claims bars all claims about which Taylor knew or had reason to know before June 9, 2015, one year before the filing date. This claim in Taylor's complaint involves and arises from an October 18, 2014 attack. As a participant in the alleged incident, Taylor clearly knew about the incident and his injuries at the time they occurred, and well before the prescriptive period lapsed.

Taylor has provided no reason, and I can conceive of no basis on which, the doctrine of contra non valentem or equitable tolling might apply to the October 2014 incident. There is no legal cause that prevented the courts from taking cognizance of or acting on Taylor's action. There is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner. Defendant did nothing to prevent Taylor from availing himself of his cause of action. The cause of action was known or reasonably knowable to Taylor.

Thus, for all of the foregoing reasons, Taylor's claim of excessive force arising from his October 18, 2014 altercation with OPP deputies is barred by the applicable statute of limitations.

III.     FAILURE TO PROTECT: AUGUST 2015 INCIDENT

Taylor's second claim concerning his stabbing by other inmates implicates defendants' constitutional obligation to protect prisoners from harm.

Taylor was a pretrial detainee on the date of the August 8, 2015 incident on which he bases this claim.  In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Taylor in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, nothing more than episodic acts or omissions of jail officials have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

16

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Williams v. Hampton, 797 F.3d 276, 280 (5th Cir. 2015).  The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates.  Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.  Farmer, 511 U.S. at 834; Williams, 797 F.3d at 281; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Williams, 797 F.3d at 281; Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291; accord Williams, 797 F.3d at 281.

In this case, Taylor fails completely to allege facts sufficient to establish that any possible defendant possessed a culpable state of mind sufficient to establish deliberate indifference.  Plaintiff's testimony and written submissions confirm that he never advised any jail official that he felt threatened or had been attacked in the past by any inmate, including any of the inmates who assaulted him.  He confirmed that neither he nor OPP officials had any warning or other indication that the other inmates would attack him. He testified that he had no prior issues of any kind, either in jail or before his incarceration, with any of the inmates who attacked him.  While he alleged that the security deputy who was supposed to be in the area when the incident occurred had left the area, there is no indication that the deputy's absence was intentional or reckless, as opposed to merely negligent.

In these circumstances, it cannot be concluded that any OPP deputy deliberately exposed Taylor to a substantial and known risk of serious harm in the constitutional sense.  See LeBlanc v. La. State Penitentiary, No. 14-0571-BAJ-RLB, 2015 WL 5011984, at *3 (M.D. La. July 28, 2015), report & recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015) (no deliberate indifference to prisoner's safety when plaintiff did not assert that he and fellow inmate who attacked him had had any prior conflict, that fellow inmate had previously threatened to cause plaintiff harm, that plaintiff had complained to defendant prior to the attack that he was in fear for his safety

from fellow inmate, or that defendant had any reason to anticipate that fellow inmate would attack plaintiff without warning); Roy v. Orleans Parish Sheriff's Ofc., No. 15-701, 2015 WL 7750498, at *2 (E.D. La. Oct. 5, 2015), report & recommendation adopted, 2015 WL 7756102 (E.D. La. Dec. 1, 2015) (When plaintiff discovered and objected to another inmate going through plaintiff's belongings, the other inmate attacked plaintiff. Plaintiff testified that the defendant deputy was not aware that plaintiff was in any danger from the other inmate. Defendant "cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which he was unaware."); Taylor v. Louisiana, No. 12-44, 2012 WL 6606961, at *3 (E.D. La. July 10, 2012), report & recommendation adopted, 2012 WL 6600553 (E.D. La. Dec. 18, 2012) (Defendant cannot "have been deliberately indifferent in failing to protect against a potential harm of which she was unaware" when plaintiff "testified that no threats were made prior to the attack and that he had no previous problems, arguments, or altercations with the inmates who attacked him. Not even plaintiff himself, much less [defendant], had advance warning of the attack.").

Because Taylor has failed to allege the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect him from a known risk of harm, his failure to protect claim should be dismissed. He remains free to pursue a state law claim of negligence in state court.

IV.    CONDITIONS OF CONFINEMENT

Plaintiff's final claim asserts that he was exposed to unsanitary and unhealthy conditions during his incarceration in OPP.  Taylor was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were

sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Taylor's allegations do not rise to the level of violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held

liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Taylor's written allegations and testimony meet neither of these two requirements. The unsanitary conditions described by plaintiff, including mold in the shower and dirty blankets, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Taylor conceded in his testimony that he has suffered no serious physical injury or illness caused by the allegedly unsanitary conditions, only minor skin irritations that were successfully treated. Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can

perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Taylor's allegations about mold or dirty conditions fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no

constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and

bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .   A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Taylor do not rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no serious physical injuries as a result of any allegedly unsanitary conditions.  Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).  Neither Taylor's medical records nor his testimony support the conclusion that any of the minor physical conditions he described were serious or even related to any unsanitary condition.

Taylor has not alleged serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.  Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning unsanitary conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

V.     SHERIFF AS SUPERVISORY OFFICIAL

Taylor makes no claim that Sheriff Gusman, whom he has named as the sole defendant in this case, was personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based.  "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrs. Corp. of Am., Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under their supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citation omitted).  In the instant action, plaintiff has failed to establish either that the sheriff was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

To hold a supervisory official liable for the acts of a subordinate, Taylor must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); accord Brauner v. Coody, 793 F.3d 493, 501 (5th Cir. 2015); Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009). To state a failure to protect claim under Section 1983, as discussed above, Taylor must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection, meaning that the official "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Payne v. Pickett, 246 F. App'x 884, 889-90 (5th Cir. 2007) (citing Farmer, 511 U.S. at 837).

Neither Taylor's testimony nor his written submissions in this case are adequate to state a cognizable Monell constitutional claim against Sheriff Gusman under these standards.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ____10th____ day of November, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.